UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KARMICKA M.,[1]

        Plaintiff,

v.                                                                                    19-CV-00914 (JLS)

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

_____

## DECISION AND ORDER

On July 12, 2019, Plaintiff Karmicka M.[1] ("Plaintiff") brought this action pursuant to Title XVI of the Social Security Act ("the Act"), 42 U.S.C., Chapter 7 seeking review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Dkt. 1. On January 10, 2020, Plaintiff moved for judgment on the pleadings. Dkt. 9. On January 28, 2020, the Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 11. On February 18, 2020, Plaintiff replied. Dkt. 12.

For the reasons stated below, this Court grants Plaintiff's motion in part and denies the Commissioner's cross-motion.

## PROCEDURAL HISTORY

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this Decision and Order identifies Plaintiff by first name and last initial.

On December 14, 2015, Plaintiff applied for Supplemental Security Income ("SSI"), alleging her disability began on December 1, 2014. Tr. 72.[2] The claim was denied initially on April 13, 2016, at which point Plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on May 31, 2018 via video hearing. Dkt. 1-1. Plaintiff appeared in Buffalo for the hearing and the ALJ presided over the hearing from Massachusetts. *Id.* The ALJ then issued a decision on July 27, 2018 regarding the SSI application, confirming the finding that Plaintiff was not disabled. Tr. 69, 82. After the unfavorable decision, the Appeals Council denied review. Tr. 1. Plaintiff then commenced this action. Dkt. 1.

## LEGAL STANDARD

### I. District Court Review

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (*quoting Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

---

[2] Dkt. 6 is the transcript of proceedings before the Social Security Administration. All references to Dkt. 6 are denoted "Tr. __."

2

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II. Disability Determination

In denying Plaintiff's application, the ALJ evaluated Plaintiff's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 416.920(a)(2). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* § 416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* § 416.920(a)(4)(ii). If there are no severe impairments, the

claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* § 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.* § 416.920(a)(4)(iii). But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* § 416.920(a)(4)(iv); *id.* § 416.920(d)-(e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* § 416.945. After determining the claimant's RFC, the ALJ completes step four. *Id.* § 416.920(e). If the claimant can perform past relevant work, she is not disabled and the analysis ends. *Id.* § 416.920(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* § 416.920(a)(4)(iv); *id.* § 416.920(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 416.920(a)(4)(v), (g); *Bowen v.*

*Yuckert*, 482 U.S. 137, 146 n.5 (1987). More specifically, the Commissioner must prove that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim by applying the five-step process outlined above. At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since December 14, 2015. Tr. 74. At step two, the ALJ found Plaintiff had the following severe impairments: affective disorder, anxiety-related disorder, personality disorder, and lumber and cervical spine disorders. *Id.* At step three, the ALJ found these impairments, alone or in combination, did not meet or medically equal any of the impairments listed in the regulations. *Id.* at 75. At step four, the ALJ determined that Plaintiff has the RFC to perform light work, which includes:

> the ability to lift/carry twenty pounds occasionally and ten pounds frequently, sit for six hours total in an eight-hour workday, and stand/walk for six hours total in an eight-hour workday. She should avoid work settings involving enclosed and concentrated exposure to extreme temperatures, humidity, fumes, dust, gases, and chemicals. Mentally, she is limited to performing simple tasks in a non-fast/non-assembly line type production-paced setting involving no interaction with the public as part of her job duties and only occasional interaction with supervisors, and co-workers. She is further limited to avoiding team or tandem type collaborative tasks. Finally, the claimant is able to make simple work-related decisions and adopt to simple changes in a routine work setting.

*Id.* at 77. Completing step four, the ALJ found that Plaintiff had no past relevant work. *Id.* at 81. At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs Plaintiff could perform exist in significant numbers in the national economy. *Id.* Accordingly, the ALJ found Plaintiff was not disabled, as defined in the Act, from the alleged onset date through the date of the decision. *Id.* at 69.

## II. Remand of the Matter for Further Proceedings is Necessary

Plaintiff asks the Court to grant her motion for judgment on the pleadings, vacate the Commissioner's decision, and remand for further administrative proceedings. Dkt. 9-1, at 15. Plaintiff argues that: (1) the ALJ erred in relying on a stale consulting opinion from Dr. Miller and in failing to account adequately for Plaintiff's back and neck conditions in the RFC, considering Plaintiff was in two car accidents following her exam with Dr. Miller, which resulted in significant back and neck injuries; and (2) the ALJ failed to incorporate adequately the limitations opined by Dr. Ippolito into the RFC finding. *Id.* at 1. For the reasons below, the Court concludes that the ALJ erred in assessing the RFC by relying on stale evidence.

### A. Assessment of Plaintiff's RFC

When deciding if a claimant is disabled, an ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F.App'x 53, 56 (2d Cir. 2013) (summary order). The ALJ's opinion does not need to "perfectly correspond with any of the opinions of

medical sources in his decision." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 587 (W.D.N.Y. 2018) (quoting *Matta*, 508 F.App'x at 56). However, an ALJ is "not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Id.* at 586 (quoting *Dailey v. Astrue*, No. 09-cv-0099, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010), *report and recommendation adopted by*, No. 09-CV-99A, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010)).

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. 2017) (quoting *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016)). A medical opinion that does not account for the "claimant's deteriorating condition" may be considered stale. *Carney*, 2017 WL 2021529, at *6; *see also Girolamo v. Colvin*, No. 13-CV-06309 (MAT), 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (the ALJ should not have given great weight to medical opinions made before plaintiff had his second surgery); *Jones v. Comm'r of Soc. Sec.*, No. 10 CV 5831(RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22., 2012) (the ALJ should not have relied on a medical opinion partially because the opinion did not account for plaintiff's "deteriorating condition" and the opinion was "1.5 years stale"). But the age of a medical opinion does not necessarily make it stale—the medical opinion still "may constitute substantial

7

evidence if it is consistent with the record as a whole notwithstanding its age." *Biro v. Comm'r of Soc. Sec*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018); *see Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (the ALJ did not err in relying on dated opinions because there was no indication that the plaintiff's "condition had significantly deteriorated" after the medical opinions were issued).

Plaintiff argues that the ALJ erred in relying on a stale medical opinion from Dr. Miller and failed to account for Plaintiff's back and neck conditions in the RFC. Dkt. 9-1, at 1. Thus, she claims the ALJ's RFC finding was not supported by substantial evidence. The Court agrees.

Dr. Miller examined Plaintiff on March 17, 2016, which occurred over three years before the hearing in front of the ALJ. Tr. 271. Dr. Miller conducted an internal medicine examination, where Dr. Miller noted Plaintiff had stable asthma with no associated abnormal findings. Tr. 271-77. In the medical opinion, Dr. Miller opined Plaintiff should avoid dust, irritants, and tobacco exposure. Tr. 273. Dr. Miller's medical opinion contained no reference to Plaintiff having any back injuries. *Id.*

In November 2017, over a year and a half after Dr. Miller's examination, Plaintiff was in the first of two car accidents. Tr. 33. The second car accident occurred in February 2018. *Id.* Following the car accidents, Plaintiff had an MRI of her spine, showing a central L5-S1 disc herniation indenting the anterior aspect of the thecal sac and a left paracentral subligamentous C4-5 disc herniation indenting

8

the anterior aspect of the thecal sac with concentric bulging of the disc at the C5-6 level. Tr. 317, 318. Plaintiff testified that her back injury, caused from the accident, has limited her ability to bend over and take care of her daughter. Tr. 35. Further, Plaintiff can only dress her daughter if "she comes up to [her] level" and "climb[s] on a chair," and her brother and sister must bathe her daughter. *Id.* She also testified that due to her back injury, she has difficulty bathing herself. *Id.* Plaintiff also recounted an instance when she was in the shower and her "back gave in." *Id.* Plaintiff's brother and sister had to come in and help her as she could not get up without assistance. *Id.*

The ALJ's conclusion about Plaintiff's back injury is unsupported by substantial evidence. First, Dr. Miller's March 2016 examination and medical opinion occurred long before her car accidents—over a year and a half before Plaintiff sustained a back injury from the first car accident in November 2017, and almost two years before Plaintiff further injured her back during the second car accident in February 2018. Tr. 33, 271. Because Dr. Miller's medical opinion, the only opinion in the record, occurred before Plaintiff's car accidents and consequential back injuries, the medical opinion does not consider Plaintiff's worsening condition. *See Carney*, 2017 WL 2021529, at *6. As a result, Dr. Miller's medical opinion was stale and, therefore, does not constitute substantial evidence to support the ALJ's findings.

As mentioned above, an ALJ cannot make a determination of the RFC on "bare medical findings" without a medical opinion. *See Biro*, 335 F. Supp. 3d at 469;

9

*Ortiz*, 298 F. Supp. 3d at 586. Here, the ALJ assessed Plaintiff's RFC based on his own layperson understanding of the medical record, which he is not qualified to do. *See Biro*, 335 F. Supp. 3d at 469; *Ortiz*, 298 F. Supp. 3d at 586. The ALJ is a "non-expert" and "generally cannot interpret the medical evidence." *Milliken v. Berryhill*, No. 1:16-CV-00297 EAW, 2017 WL 3208635, at *18 (W.D.N.Y. July 28, 2017). Without a medical opinion from an acceptable medical source opining the magnitude and impact of Plaintiff's L5-S1 and C4-5 disc herniation, and C5-6 level bulging disc, a layperson would have great difficulty rendering an accurate judgment about Plaintiff's functional capacity and limitations associated with these impairments. *See Biro*, 335 F. Supp. at 472; *Perkins v. Berryhill*, No. 17-CV-6327-FPG, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) (ALJ cannot make a common-sense judgment about a plaintiff's RFC when the record consists of "complex medical findings."). The ALJ was not permitted to determine Plaintiff's RFC using a common-sense judgment because Plaintiff's medical record contained complex medical findings like MRI results. *See* Tr. 317-18; *Williams v. Berryhill*, No. 16-CV-283-FPG, 2017 WL 1370995, at *4 (W.D.N.Y. Apr. 17, 2017); *Dale v. Colvin*, No. 15-CV-496-FPG, 2016 WL 4098431, at *4 (W.D.N.Y. Apr. 2, 2016) ("Complex medical findings like MRI results, did not permit the ALJ to render a common sense judgment about functional capacity."). Thus, the ALJ erroneously relied on bare medical findings when determining Plaintiff's RFC, rather than relying on a medical opinion.

10

Since the ALJ did not rely on a medical opinion accounting for Plaintiff's car accidents and subsequent back injuries when evaluating Plaintiff's RFC and, rather, relied solely on Dr. Miller's stale medical opinion, his decision was not supported by substantial evidence. This matter will be remanded for further administrative proceedings.

### B. Plaintiff's Remaining Argument

Plaintiff also contests that the ALJ failed to incorporate adequately the limitations opined by Dr. Ippolito into the RFC finding. Dkt. 9-1, at 11-12. Given the remand for additional administrative proceedings, the Court declines to weigh this second issue at this time. *See Biro*, 335 F. Supp. 3d at 472.

### CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings (Dkt. 9) is **GRANTED** in part, and the Commissioner's cross motion for judgment on the pleadings (Dkt. 12) is **DENIED**. The decision of the Commissioner is **VACATED**, and the matter is **REMANDED** for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   December 15, 2020
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE